| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------- | **FILED UNDER SEAL** |
| ANTHROPOLOGIE, INC. AND U.O.D., INC.,   :<br>                                                                 :<br>            Plaintiffs,                    :<br>                                                                 :<br>      -against-                              :<br>                                                                 :<br>                                                                 :<br>KVM INTERNATIONAL FASHIONS, LTD.   :<br>d/b/a  CHAUDRY and                       :<br>KRISHAN K. CHAUDRY                   :<br>                                                                 :<br>            Defendants.                   :<br>                                                                 : | Civil Action No.  04-cv-6900<br>(JGK)(RLE)<br><br>ECF CASE |
| URBAN OUTFITTERS, INC.,                  :<br>                                                                 :<br>            Plaintiff,                       :<br>                                                                 :<br>      -against-                              :<br>                                                                 :<br>                                                                 :<br>KVM INTERNATIONAL FASHIONS, LTD.   :<br>d/b/a  CHAUDRY and                       :<br>KRISHAN K. CHAUDRY                   :<br>                                                                 :<br>            Defendants.                   :<br>                                                                 : | Civil Action No.  11-cv-01723<br>(JGK)(RLE)<br><br>ECF CASE |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO MOTION TO ENFORCE A CONSENT JUDGMENT**

## **STATEMENT OF FACTS**

Anthropologie, Inc. and U.O.D., Inc. commenced Civil Action No. 04cv6900 in 2004 alleging that certain skirts sold by KVM International Fashions, Ltd., dba chaudry (hereafter "chaudry") infringed on copyrighted patterns featured on skirts sold in Anthropologie retail stores. See Belter Declaration Ex. F (Complaint in Civil Action No. 04cv6900). The parties thereafter resolved that action by entering into a settlement agreement that was embodied in a consent judgment (hereafter "Anthropologie Skirt Settlement"). See Belter Declaration Exhibit G.

The Anthropologie Skirt Settlement indicated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Id. at p. 1. Additionally, the Anthropologie Skirt Settlement indicated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Id. at p. 2.

The Anthropologie Skirt Settlement also contained numerous representations and warranties in paragraph 1, including that:



Id. at pp. 3-4.

1

Additionally, the Anthropologie Skirt Settlement indicated at paragraph 2 that Defendants agreed to cease and desist from certain conduct, including:



Id. at pp. 4-5.  The Consent Judgment largely incorporated the identical language from the Anthropologie Skirt Settlement.

In March of 2011, Urban Outfitters filed a Complaint against Defendants[1] alleging that certain handbags being sold through chaudry featured designs of which Urban Outfitters had filed copyright registrations.  See Belter Declaration Exhibit H (Complaint in Civil Action No. 11cv1723).[2]  After initial discussions between counsel, Defendants' counsel sent a letter to Urban Outfitters' counsel noting that the claims being asserted were outright baseless and likely sanctionable.  See Belter Declaration Ex. M.  The letter noted that Urban Outfitters' claim for copyright infringement could not even be asserted since Urban Outfitters had not actually obtained a registration of the purported copyright before commencing suit in violation of § 411(a) of the Copyright Act, while the remaining claims did not actually state causes of action and were indeed pre-empted by the Copyright Act.  Id.  Nonetheless, in lieu of seeking sanctions and in an effort to bring the litigation to an early resolution, Defendants agreed to disclose the identity of the manufacturer of the handbags and to cease selling the handbags.

---

[1] The Complaint contains virtually no concrete details regarding its claims and appears to be a stock Complaint that Urban Outfitters continually reuses.  See Belter Declaration Exhibits I-L (Dkt. Reports and copies of substantially similar complaints in actions that Urban Outfitters eventually dismissed).
[2] At ¶ 6 of the Complaint, Urban Outfitters acknowledges that it does not actually have a copyright registration for any of the designs at issue, but had merely filed for a registration.

2

Urban Outfitters reacted to the letter by essentially disowning their own Complaint and alleging that this matter is really about a breach of the Anthropologie Skirt Settlement. Instead, of actually addressing the lack of merit of their claims over the handbags, Urban Outfitters began to allege that the chaudry handbags that supposedly feature Urban Outfitters' designs amounted to a breach of the Anthropologie Skirt Settlement, which contains a ███████████████████████████████ ████████████████████. Plaintiff then brought the present Motion to enforce the consent judgment.

There is no overlap between the copyrighted designs in the Anthropologie Skirts addressed in the Anthropologie Skirt Settlement and the handbag designs that Urban Outfitters allege constitute infringement in the 2011 action. Nor does any mention of the handbag copyrights applicable appear in the Anthropoligie Skirt Settlement, which only mentions the specific copyrights for the Anthropologie Skirts (Indeed, any copyrights in the Urban Outfitters handbag designs would not have been in existence when the Anthropologie Skirt Settlement was reached six years ago.) Instead, Plaintiff takes the position that certain general language in the Anthropologie Skirt Settlement should be construed to encompass the Urban Outfitters' handbag copyrights at issue in the 2011 action. This position is contrary to even the most basis principles of contract interpretation and equity and should be rejected.

**ARGUMENT**

**POINT I**

**DEFENDANTS' SALE OF THE HANDBAGS AT ISSUE IS NOT A BREACH OF THE SETTLEMENT AGREEMENT GOVERNING WHOLLY UNRELATED CLAIMS REGARDING DIFFERENT PLAINTIFFS' SKIRT DESIGNS**

Initially, the settlement agreement and consent judgment are to be construed according to the usual rules of contract interpretation. See Torres v. Walker, 356 F.3d 238, 245 (2d Cir. 2004) ("Settlement agreements are contracts and must therefore be construed according to general principles of contract law."); Schurr v. Austin Galleries of Illinois, Inc., 719 F.2d 571 (2d Cir. 1983) ("a consent judgment should be construed and interpreted as a contract."); Geslak v. Suffolk County, 2008 U.S. Dist. LEXIS 105574, at *4 (E.D.N.Y. Oct. 23, 2008) ("Although consent decrees are judicial orders, they are also agreements between parties that should be construed basically as contracts.") (quoting EEOC v. New York Times Co., 196 F.3d 72, 78 (2d Cir. 1999); accord Al C. Rinaldi, Inc. v. Bach to Rock Music Sch., Inc., 2006 U.S. Dist. LEXIS 13602, at *5 (E.D. Pa. Mar. 27, 2006) ("a consent decree is governed by the ordinary rules of contract interpretation"), aff'd 235 Fed. Appx. 866, 869 (3d Cir. 2007) ("Consent decrees bear many of the attributes of contracts, and thus, 'we interpret them with reference to traditional principles of contract interpretation.'").  Here, Plaintiff's position runs roughshod over even the most basic principles of contract interpretation.

Initially, and most obviously, the Anthropologie Skirt Settlement is about skirts! The word "skirt" appears in virtually every sentence of the Anthropologie Skirt Settlement and the Consent Judgment. There is simply no mention of handbags or even mention of Urban Outfitters at all.

4

Plaintiff does not deny this.  Instead, Plaintiff claims that certain vague and general language referencing "Plaintiffs' rights" should be construed as not referencing the Anthropologie Skirts, but instead the Urban Outfitters handbag designs.  Plaintiffs do not cite a single legal precedent for this position nor can they justify interpreting such general language in such a completely out of context fashion.  Plaintiff's position is the legal equivalent of pointing to the hazy pyramidal structure in the background of the Mona Lisa and claiming the painting is most notable for being about a mountain.

New York courts have routinely noted that taking a rigid interpretation of snippets of language outside of its broader context is improper:

> Contracts are not to be interpreted by giving a strict and rigid meaning to general words or expressions without regard to the surrounding circumstances . . . . Particular words should be considered, not as if isolated from context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance . . . .

Cob Shipping Canada, Inc. v. Trans Mktg. Houston, Inc., 1993 U.S. Dist. LEXIS 10795, at *12 (S.D.N.Y. Aug. 4, 1993) (quoting William C. Atwater & Co. v. Panama R. Co., 246 N.Y. 519, 524 (1927).  As Judge Learned Handed aptly noted, "[t]here is no surer way to misread any document then to read it literally." Guiseppi v. Walling, 144 F.2d 608, 624 (2d Cir. 1944) (concurring opinion), aff'd 324 U.S. 244 (1945).  Plaintiff's position also tramples over several other basic principles of contract interpretation.

First, as a general rule, settlement documents will be interpreted in light of the specific issues that the parties sought to resolve.  See Actrade Fin. Tech., Ltd. V. Greenwich Ins. Co., 424 B.R. 59, 69 (S.D.N.Y. Br. 2009) (noting "the principle of New York law that a release, general on its face, will be limited to those claims within the contemplation of the parties at the time."); accord Forry, Inc. v. Neundorfer, Inc., 837

5

F.2d 259, 263 (6th Cir. 1988) ("general language of release will not encompass claims of which the releaser was unaware").  The Anthropology Skirt Settlement related exclusively to copyrights on skirts and the Urban Outfitters handbag designs were not even in existence.

Second, where settlement documents reference specific issues and also contain general language, the general language will be limited by the specific references.  See Aramony v. United Way of America, 254 F.3d 403, 413-14 (2d Cir. 2001) ("Even where there is no 'true conflict' between two provisions, 'specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate.'"); New York v. Saint Francis Hosp., 289 F. Supp. 2d 378, 386 (S.D.N.Y. 2003) (same); Actrade Fin. Tech., Ltd. v. Greenwich Ins. Co., 424 B.R. 59, 70 (S.D.N.Y. Br. 2009) ("the fact that the settlement agreement contained recitals regarding particular claims limited the general words of a release to the claims that were within the parties' contemplation."). Here, the Anthropologie Skirt Settlement contains repeated references to the copyrights on the skirts and thus the general language should be interpreted to apply only to those, or directly related, copyrights.

Third, applying the Anthropologie Skirt Settlement to the Urban Outfitters handbag designs, which did not even exist at the time of the Anthropologie Skirt Settlement, runs contrary to the principle that contracts should be interpreted to reach a fair and reasonable result and is not clearly mandated by the settlement agreement.  See Bank of N.Y. v. Amoco Oil Co., 35 F.3d 643, 662 (2d Cir. 1994) ("'in construing contracts, the court should reach for fair and reasonable results.'" Where one interpretation is broader than another, courts should not apply the broader interpretation

6

absent a clear manifestation of intent."); New York v. Saint Francis Hosp., 289 F. Supp. 2d 378, 387 (S.D.N.Y. 2003) (same); Transtech Elecs. PTE LTD v. Nas Elecs., Inc., 2000 U.S. Dist. LEXIS 4753, at *4-*5 (S.D.N.Y. Apr. 13, 2000) ("In New York, a settlement agreement is construed according to general principles of contract law. . . . In construing the agreement, the Court should also reach for fair and reasonable results."). Since the Urban Outfitters handbag copyrights did not even exist at the time of the settlement agreement and registration was not sought by Urban Outfitters until after chaudry's alleged infringement, Plaintiff's position would not provide a fair and reasonable result because it would create a situation where Defendants literally could not take any action to guarantee compliance with the Anthropologie Skirt Settlement.

## POINT II

### THE LIQUIDATED DAMAGES CLAUSE IN THE SETTLEMENT AGREEMENT IS UNENFORCEABLE

The primary motivation for Plaintiff's bringing the current Motion is quite obviously to try to take advantage of the clauses in the Anthropologie Skirt Settlement that provide for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Indeed, Plaintiff's counsel has repeatedly stated that its position is that Plaintiff's damages are in

---

[3] The provision that Defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Belter Declaration Exhibit G (Consent Judgment ¶ 7(h)), is quite obviously a liquidated damages clause because it determines the damages in advance of a breach. See Black's Law Dictionary 949 (8th ed. 2004) (defining a "liquidated-damages clause" as "[a] contractual provision that determines in advance the measure of damages if a party breaches the agreement."); see also Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420, 423-24 (1977) ("liquidated damages constitute the compensation which, the parties have agreed, should be paid in order to satisfy any loss or injury flowing from a breach of their contract.").

7

excess of $165,000, comprised of the ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅[4]

At no point has Plaintiff even acknowledged that any damages sought in Civil Action No. 11cv1723 could be no more than nominal even if a valid copyright is assumed since Plaintiff did not register its purported copyrights before the infringement occurred and § 412 of the Copyright Act precludes any claims for statutory damages or attorneys' fees where a Plaintiff has not registered its copyright before the infringement.

Any actual damages sought would be purely nominal. As noted in the accompanying Declaration of Krishan Chaudry, chaudry sold only 51 of the offending handbags (and actually was able to reaquire 7 of those 51 after this litigation commenced). See Chaudry Declaration ¶¶ 18-20. Given those limited sales, chaudry actually lost more than $10,000.00 between costs for manufacturing, shipping, marketing, floor space at three fashion shows, and internet marketing. Id. Thus, there are no profits to be disgorged.

Even if this Court were to determine actual damages under the assumption that Urban Outfitters would have sold all 51 bags that were sold by chaudry, this still would not lead to more than nominal damages. Urban Outfitters website, www.urbanoutfitters.com, lists a variety of handbags for sale, ranging from $8.00 to $459.00. If this Court assumes that every one of the 51 handbags would have been sold at $459.00—an unlikely assumption—Urban Outfitters' revenue for such sales would be $23,409. Urban Outfitters represented less than one year ago in Hayuk v. Urban Outfitters, Inc., Civil Action No. 09cv11281 (D. Mass.) that its profit margin is at most 14.2%. See Belter Declaration Exhibit R (Urban Outfitters' Opposition Motion at page

---

[4] Notably, this case is at its infancy with no discovery yet occurring.

18)[5]. Thus, under the best case scenario, Urban Outfitters' profits and, therefore actual damages would amount to $3,324.08. It nonetheless now claims that it is entitled to $165,000, or nearly 50 times its actual damages in its best day in Court.

Awarding Urban Outfitters 50 times its best case scenario accounting of actual damages plainly would work a penalty and such terms in the Anthropologie Skirt Settlement are unenforceable. See Leasing Serv. Corp. v. Justice, 673 F.2d 70, 73 (2d Cir. 1982) ("The law is clear that contractual terms providing for the payment of a sum disproportionate to the amount of actual damages exact a penalty and are unenforceable."); Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420, 424 (1977) ("It is plain that a provision which requires, in the event of contractual breach, the payment of a sum of money grossly disproportionate to the amount of actual damages provides for penalty and is unenforceable.").

Moreover, under Urban Outfitters argument, it is entitled to the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ no matter what the breach. Thus, if chaudry had sold even a single handbag, under Urban Outfitters' theory, it would be entitled to this vast windfall. Indeed, under Urban Outfitters' theory, if chaudry had sold a 15 cent button bearing an Urban Outfitters' design, Urban Outfitters should get more than a $100,000.

While Urban Outfitters may request this, New York courts have made clear that a liquidated damages clause that poses the same penalty no matter how minor the breach is unenforceable. See Appel v. Fischbach Corp., Inc., 1999 U.S. App. LEXIS 16041, at *2 (2d Cir. July 13, 1999) ("the liquidated damages provision is an unenforceable penalty

---

[5] This document can also be found as Document No. 86 in Civil Action No. 09cv11281 pending in the District Court of Massachusetts.

9

because it provides the same large sum for major and minor breaches"); 139 Fifth Ave. Corp. v. Giallelis, 1996 U.S. Dist. LEXIS 4056, at *12 (S.D.N.Y. Apr. 3, 1996) ("The fact that even minor breaches would trigger the liquidated damages clause indicates that it is a penalty.").

Moreover, Urban Outfitters expansive application of the liquidated damages clause is contrary to New York law mandating a narrow application of such clauses. See United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 70 (2d Cir. 2004) ("New York courts will construe a purported liquidated damages provision strictly"); Michel v. O'Brien, 27 N.Y.S. 173 (Sup. Ct., Erie Co. 1894) ("a strict construction is authorized where the provisions of a contract or lease provide for liquidated damages, as they are in the nature of a penalty."); accord United States v. Marietta Mfg. Co., 53 F.R.D. 390, 400 (S.D. W.Va. 1971) ("Though liquidated damages clauses, as such, are recognized and enforced by the courts when freely entered into by the parties to a contract, it is equally well established that such damage clauses are to be narrowly construed."); Ivy H. Smith Co. v. United States, 154 Ct. Cl. 74 (Ct. Cl. 1961) ("this construction of the liquidated damages provision is in complete accord with the well-accepted rule that such provisions should be strictly construed.").

Finally, New York courts have made clear that "if there is any reasonable doubt as to whether the clause imposes a penalty, courts should construe the provision as a penalty." 139 Fifth Ave. Corp. v. Giallelis, 1996 U.S. Dist. LEXIS 4056, at *13 (S.D.N.Y. Apr. 3, 1996).  Here, there is far more than just reasonable doubt such that the liquidated damages clause cannot be enforced.

**POINT III**

### ENFORCEMENT OF THE DAMAGES CLAUSE IN THE SETTLEMENT AGREEMENT WOULD CONSTITUTE AN UNCONSTITUTIONAL TAKING

The Supreme Court has recognized that "[t]he Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. . . . To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." State Farm Mut. Ins. Co. v. Campbell, 538 U.S. 408, 416-17 (2003). In considering the maximum allowable ratio of punitive damages to actual damages, the Court stated that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. . . . an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." Id. at 425.

Here, Urban Outfitters seeks 50 times its best case scenario accounting of actual damages. Such an award would be grossly excessive and would constitute a deprivation of due process.

### POINT IV

### ENFORCEMENT OF THE SETTLEMENT AGREEMENT IS INEQUITABLE

As noted in the accompanying Declaration of Krishan Chaudry, the photographs attached to the Complaint in Civil Action No. 11-cv-01723 depict the chaudry marketing booth at a New York fashion show in early February 2011. See Krishan Chaudry Declaration ¶¶ 16-17. Since Urban Outfitters took these pictures, it was clearly aware that chaudry intended on selling the hangbags that it now alleges infringe on Urban Outfitters' copyrights. Yet Urban Outfitters said nothing. Instead, Urban Outfitters sat

11

silently on its rights to wait for chaudry to begin selling the bags.  It now invokes the Anthropologie Skirt Settlement as a means to obtain a windfall for a scenario that it created by remaining silent.  Such inequitable gamesmanship should not be countenanced.

## POINT V

### PLAINTIFF HAS SUBMITTED NO ADMISSIBLE EVIDENCE THAT IT EVEN HAS A VALID COPYRIGHT INFRINGEMENT CLAIM

"Plaintiffs have 'the burden of proving a violation of the consent decree by clear and convincing evidence.'" See Carey Licensing, Inc. v. Erlich, 627 F. Supp. 2d 1029, 1035 (E.D. Mo. 2007).  Here, Urban Outfitters not only fails to provide "clear and convincing evidence" but provides essentially no evidence whatsoever.

Instead, of providing a Declaration from even a single fact witness, Urban Outfitters provides solely an attorney declaration and memorandum of law full of conclusory assertions, like that "[t]here is no dispute that Defendants have copied the original and copyrighted artwork . . ."  There is most certainly a disputed fact over this.

Urban Outfitters has not provided any information regarding its supposed registration of the copyrights or how it acquired the right to use the designs.  Thus, the Complaint could not even survive a motion to dismiss since it does not even set forth the set forth the requirements for a properly plead copyright infringement claim, i.e.: (i) which specific original work is the subject of the claim; (ii) that plaintiff owns the copyright in the work; (iii) that the copyright has been registered in accordance with the statute; and (iv) by what acts during what time the defendant infringed the copyright. See, e.g., Brought to Life Music, Inc. v. MCA Records, Inc., 65 U.S.P.Q.2d 1954 (S.D.N.Y.

12

2003); Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992), aff'd 23 F.3d 398 (2d Cir. 1994).

In contrast, Defendants received representations from Ahuja Overseas that it properly acquired the right to use the designs from the actual designer. See Krishan Chaudry Declaration ¶¶ 8-9. Since Plaintiff essentially provides no facts to support its claim and there has not been any discovery, Defendants currently have no further ability to dispute Urban Outfitters' claim to a valid copyright. Nor should this Court simply assume the barren assertion that Urban Outfitters has a valid copyright since Urban Outfitters is a serial infringer of others' copyrights. Indeed, a quick review of pacer filings shows dozens of cases where Urban Outfitters is accused of or actually found liable for infringement. See, e.g., Belter Declaration Exhibits N-Q (copies of court filings from other actions where Urban Outfitters' repeated copyright and trademark infringement has been enjoined).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's Motion to enforce the consent judgment be denied.

Dated: Buffalo, New York
       October 11, 2011

Respectfully submitted,

GOLDBERG SEGALLA LLP

_s/ Christopher J. Belter_____
Christopher J. Belter
*Attorneys for Defendants*
665 Main Street, Suite 400
Buffalo, New York  14203
Telephone: (716) 566-5400

13